### THE VOLUNTEER.
### THE EUREKA.

(Circuit Court of Appeals, Second Circuit. April 26, 1917.)

Nos. 192, 193.

COLLISION ⬅➡95(2)—MEETING TOWS—FAULT.

A collision between the tows of two meeting tugs in East River *held* due solely to the fault of the upbound tug in attempting to pass through the narrow space between two descending tugs, instead of passing on the port side of both.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202.]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Staples Transportation Company, owner of the steam tug Eureka, against the steam tug Volunteer, the Phœnix Sand & Gravel Company, claimant, and cross-libel against the Eureka. Decree against the Volunteer, and her claimant appeals. Affirmed.

The following is the opinion of Hough, District Judge, on the hearing in the court below:

On the afternoon of May 14th, in fair weather and with slack tide, the ocean tug Eureka came down the East River with four light barges, "bunched," three in a tier, and one tailed on behind, upon a hawser of about 50 fathoms. When approaching Brooklyn Bridge a car float was seen coming out from alongside Pier 26, Manhattan, in charge of D., L. & W. tug Newark, and also bound downstream. The Eureka blew two whistles, intending to overtake and pass the Newark and her float on the latter's port side. This plan was agreed to.

Outside the Newark and also going downstream was the tug Stone, and the Eureka intended to pass between the Stone and the Newark. The latter tug was gathering way, and was not as matter of fact overtaken. The Stone has furnished no witnesses in this case. I have no doubt her crew has been sought out and questioned, and from their absence I infer that the Stone was still a little downstream of the scene of the collision productive of litigation.

With matters in the condition above stated, the Volunteer, a tug with two loaded scows in tow tandem on a hawser of about 15 fathoms, was at least 1,000 feet and probably much more downstream of the Newark, and bound up. There was an exchange of whistle signals between Newark and Volunteer, and then between the latter tug and Eureka. Thus it was agreed all round that Newark and Eureka were to go downstream side by side (the Newark nearest Manhattan) and the Volunteer to pass to port of both. This maneuver was attempted, and during the endeavor Eureka's tow collided with Volunteer's. The consequences were serious to both, and each accuses the other of faults.

The contest between the vessels is as to which crowded the other, and in my judgment that question is solved by asking another, viz.: How wide was the passage or channel way between the courses of the Newark and Stone, when and after the Eureka and Volunteer agreed to pass port to port? This question is crucial, because there is no doubt at all that the Eureka and her tow were passing as near to the Newark and her car float as prudence permitted; i. e. 75 feet or less.

If it be true, as sworn to by those on Eureka, that the Stone was no more than 80 or 100 feet to port, then the Volunteer attempted to pass through so narrow an opening at her own risk, unless it was necessary so to do. Such was not the case according to Eureka's claim, for the substance of her complaint is that the Volunteer should have passed to port of the Stone.

If the evidence of the Volunteer's master be considered, the facts are stated quite differently, but not to the benefit of his tug. That captain was asked: "Q. What distance did you say there was between the Stone and the Eureka? A. About 500 feet, I should judge." Why the Volunteer could not keep out of Eureka's way in such a channel, when the Newark was close off the latter's starboard, is sought to be explained by a rank sheer of Eureka's tow. That no such sheer occurred is the plain weight of evidence.

So far as I can judge, the testimony from the Newark is wholly unprejudiced and disinterested. It is also strongly confirmatory of the proximity of Eureka, and the narrow waters between that tug and the Stone. It is not wholly consonant with the Eureka's assertion that all the vessels named were on the Manhattan side of the river. This last point I do not think controlling. Whether the Stone was nearer New York or Brooklyn is a matter wholly subordinate to the inquiry whether it was necessary for Volunteer to try going between Stone and Eureka. It was not; she should have passed the Stone also port to port. This statement is made because on the whole I believe the Eureka's story.

It is also held that there was no rank sheer on the part of either tow, although both tows probably drifted a little, as before collision both tugs stopped their engines, and took all tension off the hawsers. The fault was in bringing about a situation that required stopping, and that fault was the Volunteer's.

Decrees, with costs, may be entered as above indicated.

T. C. Jones, of New York City, for the Eureka.

J. A. Martin, of New York City, for the Volunteer.

Before COXE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. Decree affirmed, with interest and costs.